NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 16-4217, 17-1289

———————

UNITED STATES OF AMERICA,

v.

BRIAN HARTLINE,
                    Appellant in 16-4217

UNITED STATES OF AMERICA,

v.

BARRY BEKKEDAM,
                    Appellant in 17-1289

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 2-14-cr-00548-001, 2-14-cr-00548-002)
District Judge: C. Darnell Jones, II

———————

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2018

Before: McKEE, AMBRO and RESTREPO, Circuit Judges

(Opinion filed:  August 14, 2018)

---

OPINION[*]

---

McKEE, <u>Circuit Judge</u>

Brian Hartline and Barry Bekkedam appeal their convictions for committing

Troubled Asset Relief Program ("TARP") fraud, for making false statements to the

federal Government, and for conspiring to do both. In addition, Bekkedam contends that

his sentence is substantively unreasonable. For the reasons that follow, we will affirm.[1]

## I.

The defendants make four arguments concerning the District Court's denial of

their post-trial motions for acquittal or a new trial, and Bekkedam alone challenges his

sentence.[2] We will address each issue in turn.

## A.

The defendants first contend that the evidence was insufficient to prove beyond a

reasonable doubt that they knowingly made false representations to the federal

Government. When reviewing the sufficiency of the evidence at trial, "we must examine

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] We exercise plenary review over the District Court's denial of the defendants' Rule 29 motion, *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999), and we review its denial of the Rule 33 motion for abuse of discretion, *United States v. Schneider*, 801 F.3d 186, 201 (3d Cir. 2015).

the totality of the evidence, both direct and circumstantial"[3] and "interpret the evidence in the light most favorable to the Government as the verdict winner"[4]. "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high," and "the Government may defeat [such a] challenge on circumstantial evidence alone."[5] We will therefore "overturn a jury verdict 'only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt . . . .'"[6]

Hartline and Bekkedam were convicted under 18 U.S.C. §§ 371, 1031, and 1001. Section 1031 makes it unlawful for a person to knowingly execute a scheme "to obtain money or property by means of false or fraudulent pretenses, representations, or promises . . . including through [TARP] . . . ."[7] Similarly, § 1001 applies to anyone who "knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation" in any matter within the jurisdiction of the federal Government.[8] Section 371 makes it unlawful to conspire to commit either of those offenses. The defendants claim that the evidence was insufficient to establish fraudulent intent.

---

[3] *United States v. Miller,* 527 F.3d 54, 62 (3d Cir. 2008) (quoting *United States v. Gambone,* 314 F.3d 163, 170 (3d Cir. 2003)).

[4] *Id.* at 60 (quoting *United States v. Taftsiou,* 144 F.3d 287, 290 (3d Cir. 1998)).

[5] *United States v. Iglesias*, 535 F.3d 150, 15–56 (3d Cir. 2008) (internal quotation marks omitted).

[6] *United States v. Thayer,* 201 F.3d 214, 218–19 (3d Cir.1999) (quoting *United States v. Anderson,* 108 F.3d 478, 481 (3d Cir.1997)).

[7] 18 U.S.C. § 1031(a)(2).

[8] 18 U.S.C. § 1001(a)(2).

The Government produced evidence showing that the defendants falsely represented to the United States Department of the Treasury that NOVA Financial Holdings ("NOVA Financial")—a financial institution founded by the defendants—had raised $5 million of capital through an investment from George Levin and a combined $3 million of capital through investments from Anthony Bonomo and Charles Gallub. Hartline first told a Federal Deposit Insurance Company ("FDIC") regulator that NOVA Financial was going to receive a $15 million investment that would allow the bank to be well capitalized as opposed to only adequately capitalized. Hartline subsequently notified the FDIC that NOVA Financial had received an initial $5 million investment, and he later asserted that "NOVA ha[d] met the contingency requirement by raising [another more than] $10 million in capital."[9] The FDIC gave this information to the Department of the Treasury.[10] In fact, NOVA Financial had not met the contingency requirement because money borrowed from NOVA Bank and invested in its parent company could not count as capital, and a rational juror could easily conclude from the evidence that Hartline was aware of this fact. That Hartline concealed the true purpose of the loans and did not disclose to regulators that the investments were proceeds from those loans underscores this finding. The assertion that the representations were literally true is unavailing. The Government proved that the defendants fully understood what "capital" meant in the context of its application for Capital Purchase Program ("CPP") funding. A

---

[9] Joint App'x II. 3363.
[10] Gov't's Supp. App'x 50.

4

reasonable jury considering the context in which Hartline's representations were made could conclude beyond a reasonable doubt that they were false.[11]

Hartline and Bekkedam next contend that there is insufficient evidence showing that Hartline's representations, even if false, were material. A declaration is material if it has "a natural tendency to influence, or [is] capable of influencing, the decisionmaking body to which it is addressed."[12] Actual influence need not be proven as long as the evidence is sufficient to support a conclusion that the misrepresentations could have influenced the decision maker. It is undisputed that the CPP council was trying to decide whether NOVA Financial could meet the CPP's minimum capital requirements. Indeed, approval for CPP funding was contingent on NOVA Financial's ability to raise capital. The record is sufficient to prove beyond a reasonable doubt that Hartline's characterizations of the three investments in question as "capital" were capable of influencing that decision. Furthermore, as the District Court observed, "at least four Government employees involved in the TARP process testified that it would be important to know that capital raised by a holding company was derived from loans dispersed by

---

[11] Although Bekkadam does not argue that the statements here are not attributable him, we note our agreement with the District Court that his conviction must be upheld under *Pinkerton v. United States*, 328 U.S. 640 (1946), as the Government proved that he and Hartline were co-conspirators and that the misrepresentations were made in furtherance of the conspiracy. *United States v. Bailey*, 840 F.3d 99, 112 (3d Cir. 2016) ("[E]ach member of the charged conspiracy is liable for the substantive crimes his coconspirators commit in furtherance of the conspiracy even if he neither participates in his co-conspirators' crimes nor has any knowledge of them, absent the following three exceptions to that rule.").

[12] *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005) (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)).

the bank."[13]  Thus, Hartline's false representations were material, and the defendants' contention to the contrary is meritless.

The defendants also argue that no reasonable jury could conclude that they acted with specific intent to defraud the Government, as required for a conviction under § 1031. The evidence viewed in a light most favorable to the Government belies this contention. "[T]o act with an intent to defraud means to act knowingly and with the purpose to deceive or to cheat."[14]  We have already explained that the evidence was sufficient to prove that the defendants knew that the Levin, Bonomo, and Gallub investments could not be properly characterized as capital.  The Government also produced evidence that Bekkedam sent a letter representing that Levin was going to make a $15 million capital investment in NOVA Financial.  Bekkedam also "coordinated the plan for the Levin loan and subsequent investment with Defendant Hartline."[15]  Hartline then falsely told an FDIC regulator that the bank had satisfied the capital contingency.  Together with Bekkedam's own admission that he was "manag[ing] Brian who is managing his regulators" and that "the regulators are killing [Hartline]," this representation is sufficient to prove that the defendants made the underlying false representations with the specific intent of obtaining funding that NOVA Financial was not eligible to receive under the CPP.

**B.**

---

[13] *United States v. Hartline*, No. CR 14-548, 2016 WL 8716246, at *7 (E.D. Pa. Sept. 16, 2016)

[14] *United States v. Leahy*, 445 F.3d 634, 644 (3d Cir. 2006).

[15] *Hartline*, 2016 WL 8716246, at *7.

The defendants next contend that, because the KPMG auditor who testified during the trial was not offered as an expert witness, his testimony should be excluded as improper expert testimony. Our review here is for abuse of discretion.[16]

Rule 701 permits a lay witness's opinion if it is "rationally based on the witness's perception," is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[17] Here, the witness testified that, during the audit he learned that Levin, Bonomo, and Gallub borrowed money from NOVA Bank and invested it in its parent company.[18] The witness concluded that the investments therefore could not be counted as capital. His testimony was not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702"[19] and was clearly relevant. The District Court did not abuse its discretion in allowing it.

## C.

The defendants also claim that the Government's proof constructively amended the indictment. We must therefore determine if the alleged amendment deprived them of their "substantial right to be tried only on charges presented in an indictment returned by a grand jury."[20] An indictment can be constructively amended through "evidence . . . if [it] effectively amend[s] the indictment by broadening the possible bases for conviction

---

[16] *United States v. Shaw*, 891 F.3d 441, 453 (3d Cir. 2018).
[17] Fed. R. Evid. 701.
[18] Joint App'x II. 3399, 2476-2477.
[19] Fed. R. Evid. 701(c).
[20] *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) (quoting *United States v. Miller*, 471 U.S. 130, 140 (1985)).

from that which appeared in the indictment."[21] The defendants "did not raise this argument in the District Court and we therefore apply the plain error standard of review."[22]

Hartline and Bekkedam argue that the indictment charged only that they violated federal law by affirmatively making false statements and representations whereas the evidence at trial showed only that they fraudulently concealed material facts. However, the indictment charged that the defendants executed their fraudulent scheme "by means of false or fraudulent pretenses, representations, or promises" and by making a "false, fictitious, or fraudulent statement or representation."[23] We have already explained that the evidence showed that the defendants falsely represented that they had fulfilled the conditions set forth by the CPP council by raising $15 million in capital. Because the defendants were convicted of the same conduct for which they were indicted, there was no constructive amendment and no need for a concealment instruction.[24]

**D.**

Bekkedam also argues that the District Court erred by refusing to give the jury a theory of defense instruction.

A defendant in a criminal case is generally entitled to have the jury instructed on his theory of defense if "(1) he proposes a correct statement of the law; (2) his theory is

---

[21] *United States v. Vosburgh*, 602 F.3d 512, 532 (3d Cir. 2010) (citation omitted).
[22] *Syme*, 276 F.3d at 148 (citation and internal quotation marks omitted).
[23] Joint App'x II. 105.
[24] *See Vosburgh*, 602 F.3d at 532 ("If a defendant is convicted of the same offense that was charged in the indictment, there is no constructive amendment.").

supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction of the defendant's theory would deny him a fair trial."[25] The defendants asked the court to instruct the jury that it could not convict if there was a reasonable doubt about whether the defendants acted with the requisite intent. Essentially, the defendants requested a good faith charge. The District Court thoroughly and accurately instructed the jury about the required element of intent under the relevant statutes.[26] In particular, the court told the jury that there could be no conviction on counts one and two unless the Government proved beyond a reasonable doubt that the defendants acted "knowingly and with the intention or purpose to deceive or to cheat not through misunderstanding."[27] As for the remaining counts, the court instructed that the jury had to find that the defendants acted "knowingly and willfully" or "purposefully and voluntarily as opposed to mistakenly or accidentally" and "with a bad purpose to disobey the law."[28] The proposed theory of defense instruction was clearly duplicative of the instruction the court actually gave, and therefore, it did not abuse its discretion in denying the defendants' proposed separate instruction on intent.[29]

**E.**

---

[25] *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008).
[26] Joint App'x II. 3127; 3112.
[27] Joint App'x II. 3127.
[28] Joint App'x II. 3112.
[29] *See United States v. Friedman*, 658 F.3d 342, 354 (3d Cir. 2011).

Finally, Bekkedam argues that his sentence is substantively unreasonable because the District Court did not similarly impose an upward variance on Hartline. Our review is for abuse of discretion.[30]

"A criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants, and a [d]isparity of sentence between co-defendants does not of itself show an abuse of discretion."[31] Thus, the imposition of different sentences for co-conspirators does not, without more, amount to an abuse of discretion. Bekkedam was sentenced to eleven months of incarceration, and Hartline received fourteen months of incarceration. The record also demonstrates that the District Court carefully considered the 18 U.S.C. § 3553(a) factors. The sentence was reasonable.

## II.

For the foregoing reasons, we will affirm.

---

[30] *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) ("The abuse-of-discretion standard applies to both our procedural and substantive reasonableness inquiries.").
[31] *United States v. Hart*, 273 F.3d 363, 379 (3d Cir. 2001) (citations and internal quotation marks omitted) (brackets in original); *see also United States v. Dansker*, 581 F.2d 69, 74 (3d Cir. 1978) ("It is settled that a defendant has no constitutional complaint because he or she has received a more severe sentence than that of a co-defendant.").